Birchard, C. J.
In order to determine whether the Supromo Court erred upon the circuit, we must examine the errors assigned upon the record as there presented. The first is a defect in the declaration. In this there is nothing.
The second error relates to the exclusion of that portion of Shaw’s testimony, which is in the following words: 11 That from his previous habit of receiving goods on the wharf-boat for Haynie, and which was ratified by him, and from the fact that he was in the habit of receiving goods for merchants generally, at Memphis, ho considered himself authorized to receive goods directed to Haynie, or almost any merchant at Memphis.”
This was stricken from the deposition and not permitted to bo read to the jury, on the ground that it was argumentative. Is it not objectionable ? "What right had this witness to testify what he thought, or considered, and what were the inferences which he drew from the facts known to himself, and not disclosed?. He had no such right. He was called as a witness to give facts, not legal conclusions, *or his own conclusions, upon a state of facts unknown to the court and jury. He does not state what had been done which he considered a ratification by Haynie of his reception of goods that had been previously consigned to Haynie and delivered to him. Neither the court nor jury could possibly tell from this statement, which was rejected, whether Haynie had done anything which could in law bo regarded a ratification. The utmost that could be inferred from it would be that somc *433 thing had been done by Baynie, which was a ratification, provided the witness was honest and had drawn correct legal inferences. The whole statement was a matter of mere argument and' opinion, upon a point where he could* have stated facts, and was-not entitled to give an opinion. There was no error in affirming-that part of the judgment of the superior court which averted this statement from the jury.
The next assignment of error is founded upon this question t “What do you know, if anything, of any custom of trade in delivering goods at Memphis by steamboats, different from the usages of other ports on the Mississippi river?” This was objected to, and another form of propounding the interrogatory was insisted on, but the court overruled the objection.
It is said that this question was unfair, leading, argumentative,, and faulty in effect, if not in form. That the witness, if ignorant of the customs of all ,the places on the river, would have answered negatively, and so the plaintiff would have gained proof from the mere ignorance of the witness against the existence of the special custom sought to bo established as a valid custom at the port of Memphis. We do not think the question was fairly liable to any such objection. If the witness really knew nothing about the-trade by steamboat, carried on upon the river, and particularly at Memphis, the objection to his testimony should have been placed-upon that ground. Assuming that he did know and was competent to testify concerning the usages or customs of the river, and this question was as far from being leading as anything *could be; nor was there anything unfair in it. If, in fact, a special custom existed at Memphis, by which a delivery to Shaw was a good delivery to Haynie, or to whomsoever goods might be consigned, the witness would not fail to-state it, supposing him to be a person of ordinary intelligence, and acquainted with the river-trade. It would have been so far out of the usual way of trade, that no business man would have forgotten or neglected to state it. And if „he had so forgotten, a cross-examination or a single question would have brought-out the fact, and the extent of his knowledge, or his total want of all information upon the subject.
Another error complained of by the plaintiff is set out in the third exception. The plaintiff below prayed the court to charge the-jury, and the court so charged, among other matters, that the usage set up by the defendant was not valid, and did not make- *434 ■out a good delivery unless it was proved that a large majority of merchants at Cincinnati, shipping goods to Memphis, knew of the usage; that a local custom at Memphis regulating the mode of •delivering goods there is not binding on shippers at Cincinnati, -if not known to merchants and shippers abroad; and that a practice of delivering goods at particular places, in a particular way, •though long acquiesced in before any difficulty arose, is not valid •as a custom.
We find no fault with this instruction. But the defendant objected to the charge asked by the'plaintiff, and prayed the court •to charge the jury that a delivery according to the established custom at the port of destination is good in the absence of any special provision to the contrary; that shippers are bound to take notice of the usages at the port of destination, and must be presumed to-contract with reference to such usages; and that the defendant was bound only to show a delivery, according to the known and usual custom at Memphis, and not to show that such •usage at Memphis, was known among a large majority of those ■elsewhere engaged in the Memphis trade, but only that such was the ^general custom of delivery at Memphis. This the court refused to give in the form asked, and we think rightly. Because taken altogether it would have misled the jury. The law is here •/Bo blended with error, that a jury would not have been able from ••the entire paragraph to gather a safe rule. The court could not with any propriety say that a contract made at Cincinnati, was -made in reference to a custom unknown to one of the parties at that place, and unknown to those residing there and engaged in the Memphis trade. It is misapplying legal terms to call a local ^practice, not known to persons generally engaged in the Memphis trade, a usage, or a custom, or a general custom.
A practice which is unknown to those generally engaged in •the trade, and interested in it, can not be sustained as a usage. It can not control the terms of a contract, because those making •the contract can not be presumed to contract in reference to a •thing of which they were ignorant. A custom once established becomes a law as to the particular subject to which it relates. And being of this nature, the legal presumption at once obtains that the contract was made in reference to it, because it is in the nature of a law. But to give it this force, notoriety, uniformity, ¡¡reasonableness, and public acquiescence in it are requisite.
*435 In carefully reviewing the entire charge set forth in the third bill of exceptions, we are satisfied that the jury were not misdirected, and that it shows no error to the plaintiff’s prejudice.
Upon the fourth bill of exceptions, the objection is taken to the judges remark that “ he did not think there was a particle of evidence that ELaynie was absent on that day,” meaning the day the goods were left at the wharf-boat of Shaw & Co., when two witnesses had stated that Haynie was not in business at Memphis after October 1, 1844, when he became clerk of a steamboat. It is probable the court would have corrected this mistake in a matter of fact at the time, had it been called to their attention and the testimony of the witnesses referred to. Whether there was any such testimony *or not, does not appear from the record. But we should not reverse the judgment if it did so appear, be■cause that matter seems to us foreign to the issue. We should regard the error as an error upon an abstract proposition in no way material to the merits of the cause. The second bill of exceptions sets forth part of an agreed statement of facts, showing ■that the goods were landed at the wharf-boat of A. B. Shaw & Co., and that the only question in the case must have been, whether that was such a delivery as discharged the carrier from liability. It was claimed that a custom of the trade made that a good delivery according to a stipulation contained in the bill of lading, and if the court committed no error on the real points in controversy, the plaintiff has no right to complain; no matter how numerous may have been the mistakes in stating principles or facts that had nothing to do with the case then in hand.
All the law that was laid down upon the subject of storage, may be considered as out of the case. There is nothing in the record to -show that it was applicable. Nothing to show that the Albatross left the goods in store ; that they were placed in Shaw’s hands for any such purpose ; or that his wharf-boat was a proper place of storage. If the charge upon this point was at all material, then the bill of exceptions is very defective in not showing how it became so. Judgment affirmed.